## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

GLENN BROSNICK,               CASE NO.:   18-cv-60645

     Plaintiff,

vs.

WELLS FARGO BANK, N.A.

     Defendant

_____/

## COMPLAINT

**COMES NOW,** the Plaintiff, Glenn Brosnick ("Plaintiff or Brosnick"), by and through undersigned counsel, and brings this action against the Defendant, WELLS FARGO BANK, N.A. ("WELLS FARGO or Defendant"), and as grounds thereof would allege as follows:

## PRELIMINARY STATEMENT

1.    This is a civil action seeking monetary relief pursuant to 12 U.S.C. § 2605(f), for violations of 12 U.S.C. § 2601 *et seq.,* commonly known as the Real Estate Settlement Procedure Act and implementing regulations ("RESPA"), which among other things, regulates the procedural process for applications for loan modifications for certain distressed borrowers.

2.    As is more fully explained below, WELLS FARGO, in its capacity of servicer of Brosnick's mortgage loan, purposefully and with aforethought, falsely represented to Brosnick that if he entered into a consent judgment of foreclosure with WELLS FARGO, it would cooperate with Brosnick to modify his mortgage.

3. Instead, once WELLS FARGO obtained its consent judgment of foreclosure, WELLS FARGO systematically set about to intentionally violate RESPA to summarily deny Brosnick's application for loan modification.

4. WELLS FARGO systematically replaced its representatives, Home Preservation Specialist, once Brosnick had provided all documents requested to avoid having to form an evaluation on Brosnick's loan modification application; and when that became flagrant, denied the loan modification request without a specific reason so as to deny Brosnick the ability to mount a decent appeal. These violations of RESPA seemingly gave WELLS FARGO the cover it needed to then go forward with the foreclosure of Brosnick's home.

5. Because WELLS FARGO refused to comply with RESPA, Brosnick had to hire three sets of lawyers: lawyers to represent him during his application with WELLS FARGO and before the trial court; lawyers who are currently representing him in his appeal of the foreclosure judgment; and lawyers to represent him before this Court.

6. Brosnick has suffered damages as a result of WELLS FARGO's violation of RESPA and Brosnick is entitled to actual and statutory damages.

**JURISDICTION, VENUE, AND PARTIES**

7. This Court has subject matter jurisdiction over Plaintiff's claim under RESPA and Regulation X pursuant to 12 U.S.C. § 2614.

8. Venue is proper in the United States District for the Southern District of Florida under 12 U.S.C. § 2614 because it is the district in which the property is located.

9. At all times material hereto, Plaintiff was and is a resident of Broward County, Florida, and owns a home located at 2933 Birch Terrace, Davie, Florida 33330, which is the Plaintiff's primary and only residence in Broward County.

2

10.     At all times material hereto, Defendant, WELLS FARGO BANK, N.A., was and is a national banking institution chartered and supervised by the Office of the Comptroller of the Currency, an agency of the U.S. Treasury Department, pursuant to the National Bank Act, duly licensed to transact business in the State of Florida, with a principal address of 420 Montgomery Street, San Francisco, CA 94104, and lists its registered agent for service of process in the State of Florida as Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

## RESPA

### *RESPA Applies to WELLS FARGO*

11.     In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), Public Law No. 111-203, 124 Stat. 1376 (2010).

12.     On July 10, 2013, the CFPB issued mortgage rules under Regulation X pursuant to its authority under the DFA. Regulation X became effective on January 10, 2014. 12 C.F.R. § 1024. Regulation X is the implementing regulation of RESPA and applies to all loan servicers who service a federally related mortgage loan.

13.     Defendant is a loan "servicer" of the Plaintiff's "federally related mortgage loan" as those terms are defined in RESPA. 12 U.S.C. §§ 2602(1) and 2605(i)(2). Defendant engages in the following activities: receives payments from consumers and is responsible for distributing those payments to the investors who own the consumer's loans and, when the consumer's loans include escrow accounts, to the consumer's taxing authorities or insurance companies. Thus, the Defendant is subject to the servicing requirements provided for in RESPA and Regulation X.

14.     RESPA and Regulation X are applicable to all "federally related mortgage loans," which include any loans secured by a first or subordinate lien on residential real property upon which a one-to-four family structure is located and which is made in whole or in part by any lender that is either regulated by or whose deposits or accounts are insured by an agency of the Federal Government.  *See* 12 C.F.R. § 1024.  WELLS FARGO is regulated by federal agencies and its deposits are insured by a federal agency.   Accordingly, Plaintiff's mortgage is a "federally related mortgage loan" as defined in Regulation X.  *Id.*

15.     Thus, WELLS FARGO, as the servicer of the Brosnick Mortgage Note is therefore subject to Regulation X and the regulations governing Brosnick's request for loan modification.

16.     Plaintiff asserts a claim for relief against WELLS FARGO for violations of the specific rules under Regulation X as set forth below.

17.     Plaintiff has a private right of action against WELLS FARGO under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual and statutory damages, attorney's fees and costs.

***Brief Summary of Relevant RESPA Requirements***

18.     Regulation X requires, among other things, that a servicer follow certain procedures once a borrower requests loss mitigation assistance.

19.     The CFPB has mandated a *procedural* framework within which the evaluation of loss mitigation must take place.

20.     Borrowers have a private right of action for, among other things, a servicers failure to give required notices, including when an application is complete, failure to reasonably evaluate applications in accordance with required time frames, failure to refrain from continuing

the foreclosure process during certain periods of the loss mitigation review process, and in the event of a denial of the application, failure to give specific reason(s) for such denial so as to enable the borrower to mount a bona fide appeal under the RESPA appeal process.

21.     Defendant has violated these RESPA procedures and Plaintiff is entitled to actual and statutory damages for such violations.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

***Foreclosure of the Brosnick Mortgage Note***

22.     On or about September 6, 2005, Glenn and Karin Brosnick executed and delivered a Promissory Note ("Mortgage Note") and a Purchase Money Mortgage securing the payment of the Mortgage Note in the amount of $625,000.00.  The Mortgage Note was recorded on September 21, 2005, in Official Records Book 40541 at Page 1728, of the Public Records of Broward County, Florida, giving rise to a mortgage lien on Brosnick's family residence.  The originator of the Mortgage Note was GL Financial Services.

23.     WELLS FARGO is the servicer of the Mortgage Note.  (Composite Exhibit A).[1]

24.     On or around April 3, 2013, WELLS FARGO filed its Motion for Leave to File Amended Mortgage Foreclosure Complaint that was granted in the Florida state court.  (Exhibit A).

25.     That case is styled *US Bank National Association, As Trustee for GSR 2007-1F vs. Glenn Brosnick, et al,* Case No.: CACE-09-011876, in the Seventeenth Judicial Circuit Court of Florida.

---

[1] Plaintiff has attached as exhibits some of the correspondence he had with the Defendant. However, certain files related to this Complaint have been corrupted.  Many of the emails referenced in this Complaint are presently not retrievable.   In any event, the missing correspondence referred to in this Complaint will be obtained from Defendant during discovery.

26.     On July 9, 2013, Brosnick, with the assistance of the law firm of Michael H. Merino, P.A. ("Merino Law"), applied for a loan modification of the Mortgage Note (hereinafter referred to as "Loss Mitigation or Modification of Loan") to WELLS FARGO.  (Exhibit B).

27.     That application was put on hold as a result of Glenn Brosnick's divorce from his wife Karin Brosnick.

28.     But in August 2014, Merino Law received an email correspondence from Wolfe Law PA, WELLS FARGO'S foreclosure firm, offering to settle the case.

29.     In essence, the letter stated that in exchange for a consent judgment, WELLS FARGO was willing to cooperate in its ongoing Loss Mitigation efforts vis-à-vis the Mortgage Note to effectuate its modification.  *Id.*

30.     Based on the representations that WELLS FARGO made in that August 2014 letter, on October 21, 2014, Brosnick entered into a stipulation of settlement for a consent judgment in which WELLS FARGO warranted that it would "cooperate in reviewing [Brosnick] for loss mitigation."  (Exhibit C).

31.     As part of this consent judgment, WELLS FARGO agreed not to seek a foreclosure sale date, in part to review the application for loss mitigation and determine what options were available to Brosnick.  *Id.*

32.     On October 22, 2014, Brosnick entered into a consent judgment with WELLS FARGO to, among other things, delay the foreclosure sale and for WELLS FARGO to determine what loss mitigation options were available to him.

### *First Home Preservation Specialist*

33.     On January 13, 2015, the initial loss mitigation application package was sent to WELLS FARGO Home Preservation Department ("Preservation Department").

34.     The package included, among other things, tax returns, profit and loss statements, bank statements, and a hardship letter.

35.     Two days later, on January 13, 2015, a letter was sent to Brosnick informing him that he was being evaluated for a Loan Modification under the Home Affordable Modification Program, the federal government program that targeted aid to home owners in states hardest hit by the 2008 economic crises to prevent foreclosure (Exhibit D).

36.     This letter indicated that if Brosnick successfully completed a trial period plan that WELLS FARGO would offer him a permanent modification of the Mortgage Note.  *Id.* Brosnick never received a trial period plan for any option.

37.     Despite receiving this application, and in spite of RESPA Regulations prohibiting dual tracking (i.e., pursuing the foreclosure while evaluating an application for Loss Mitigation), WELLS FARGO moved on at least two occasions for orders setting a foreclosure sale before issuing its Loss Mitigation determination.

38.     On January 16, 2015, WELLS FARGO Home Preservation Specialist Evangelina Parra ("Specialist Parra"), sent Brosnick a letter stating that the Preservation Department had received his documentation and would carefully evaluate them to determine whether he was eligible for a loan modification.  Specialist Parra further stated that if Brosnick were eligible, he would receive a trial period plan.  WELLS FARGO did not indicate whether the application was complete or incomplete.

39.     On January 21, 2015, Merino Law spoke to Specialist Parra who stated that the documents were in underwriting.

40.     On January 30, 2015, Brosnick received a letter from Specialist Parra requesting more information.  Brosnick provided that information.

7

41.     On February 10, 2015, Specialist Parra confirmed that they had received the requested documents.

42.     On March 9, 2015, Specialist Parra sent Brosnick a letter requesting additional documents.

43.     On March 10, 2015, Brosnick provided to Specialist Parra the requested documents (Exhibit E).

44.     On March 12, 2015, after this final submission of documents to Specialist Parra, WELLS FARGO informed Brosnick that it had replaced his Home Preservation Specialist (Exhibit F).

***Second Home Preservation Specialist***

45.     In the March 15, 2015 letter, WELLS FARGO informed Brosnick that his new Home Preservation Specialist was Christopher Reagan, but that letter did not request any new documents or information; nor did the letter state that additional requests for information may be forthcoming. *Id.*

46.     As a result, on March 30, 2015, Merino Law contacted WELLS FARGO and was advised that no new information was required.

47.     But on April 2, 2015, and more than 25 days since the last request for documents, Plaintiff received a letter from Specialist Reagan requesting information (Exhibit G).

48.     On April 10, 2015, Brosnick provided all of the information and additional documentation requested to Specialist Reagan (Exhibit H).

49.     On or about April 13, 2015, Brosnick received a letter from Specialist Reagan indicating that WELLS FARGO had received the documentation requested.  (Exhibit I).  The letter further stated that additional information and documentation may still be required. *Id.*  The

letter stated that WELLS FARGO would not conduct a foreclosure sale on the Mortgage Loan while the documents were under review. *Id.*

50.     On April 21, 2015, Merino Law spoke to Specialist Reagan who again requested additional information.   He requested a 2014 year-to-date profit and loss statement for Brosnick's company.

51.     On April 22, 2015, WELLS FARGO in contravention of Regulation X engaged in the prohibited dual tracking and moved for an order setting a foreclosure sale while it was considering Brosnick's request for Loan Modification.  (Exhibit J)

52.     On May 14, 2015, Brosnick's 2014 year-to-date profit and loss statement was sent to Specialist Reagan.  (Exhibit K).

53.     On or about May 20, 2015, Brosnick received another letter acknowledging receipt of the documentation.  The letter again stated that WELLS FARGO would not conduct a foreclosure sale while it was reviewing the documents; yet, WELLS FARGO had moved the court to set the date for a foreclosure sale.  (Exhibit L).

54.     On May 28, 2015, Merino Law called WELLS FARGO to inquire as to the status of the application for Loan Modification.  Merino Law was informed by Nathan Tweed that the file was currently in underwriting and that it was in "servicer decision" status.  This statement by WELLS FARGO's representative clearly indicated that the application for Loan Modification was complete.

55.     But yet again, on June 15, 2015, WELLS FARGO requested more information. (Exhibit M).

***Third Home Preservation Specialit***

56.     On July 3, 2015, Brosnick was informed that his Home Preservation Specialist had been replaced.  WELLS FARGO Home Preservation Specialist Susan Hartman, who replaced Specialist Reagen, requested more information to that requested in the June 15, 2015 letter.

57.     On July 8, 2015, Brosnick sent to WELLS FARGO the information requested in the June 15, 2015 letter.

58.     On or about July 9, 2015, Brosnick received a letter from Specialist Hartman acknowledging that she had received the documentation that she requested.  (Exhibit N).  In that letter, WELLS FARGO indicated that it would not conduct a foreclosure sale on the loan while the documents were being reviewed despite having moved for an order to set a date for the foreclosure sale in contravention of RESPA.

59.     On July 23, 2015, Merino Law received a call yet again from Specialist Hartman requesting further explanations, clarifications, and additional documents.

60.     Brosnick provided the documents and information.  (Exhibit O)

61.     On July 27, 2015, Brosnick received another letter from Specialist Hartman acknowledging that WELLS FARGO had received the documentation requested, and, like always, that a foreclosure sale would not be conducted while the documents were being reviewed by WELLS FARGO.  (Exhibit P).

62.     On or about August 3, 2015, Brosnick received another letter from Specialist Hartman requesting more information (Exhibit Q).  She requested approximately 17 new documents.  *Id.*

63.     On August 18, 2015, WELLS FARGO, in contravention of Regulation X, engaged in the prohibited dual tracking and moved for an order setting a foreclosure sale while it was considering Brosnick's request for Loan Mitigation.  (Exhibit R)

64.     On August 24, 2015, Merino Law spoke with Specialist Hartman seeking clarification on a few documents and/or information that she requested.

65.     Then on August 27, 2015, 50 pages of documentation was sent to Specialist Hartman that provided a response that included detailed explanations, clarifications requested, and additional documents.  (Exhibit S)

66.     On August 28, 2015, Specialist Hartman sent a letter acknowledging receipt of the information and documentation.  She also indicated that WELLS FARGO would not conduct a foreclosure sale during the review of the information and documentation.  (Exhibit T)

***Fourth Home Preservation Specialist***

67.     On September 4, 2015, Brosnick received a letter from WELLS FARGO informing him that they were replacing, yet again, his Home Preservation Specialist with Latoya Johnson.  (Exhibit U)

68.     On September 10, 2015, Merino Law contacted WELLS FARGO to request the status of the application for loan modification and for it to confirm receipt of the information and documentation that was sent on August 27, 2015.  The representative of WELLS FARGO confirmed receipt of this information and documentation and stated that the file was under review and that no additional documentation was needed.  This statement meant that the application was complete per RESPA.

69.     On September 14, 2015, Brosnick received a letter from WELLS FARGO, along with an appraisal indicating that the value of the subject property was $1,269,000.00. More than $644,000.00 more than the principal of the loan.

70.     Since August 3, 2015, Brosnick did not receive any request for further information and documentation from Specialists Hartman and Johnson or from WELLS FARGO. Consequently, WELLS FARGO refused to provide to Brosnick the written notice required by RESPA that the application was complete.

***Denial Letter Lacking a Specific Reason***

71.     On September 18, 2015, after sending WELLS FARGO reams of information and documentation and 9 months of back and forth, Brosnick received a denial letter from WELLS FARGO which stated that the Loan Modification had been denied due to the borrower not providing the lender with *valid* documents as requested.

72.     None of WELLS FARGO's correspondence questioned the validity of the documents that Brosnick provided.

73.     None of the Home Preservation Specialist ever questioned the validity of the documents that Brosnick provided.

74.     None of the WELLS FARGO representatives that Merino Law spoke with ever questioned the validity of the documents that Brosnick provided.

75.     In shock, Merino Law immediately contacted WELLS FARGO and spoke with a representative by the name of Joe Simon who advised that the application for Loan Modification was denied due to "discrepancies contained within the documents" with no specific reason or reasons or other information as to why there were discrepancies.

76.     This letter also indicated that a borrower had a right to appeal the WELLS FARGO decision if the borrower believed that the decision was incorrect.

77.     However, since WELLS FARGO did not provide Brosnick with any *specific reason* why the application for Loan Modification was denied, other than to say the documents were not valid, it was near impossible to mount a reasonable appeal.  WELLS FARGO did not even indicate which of the *reams* of documentation was invalid, so that Brosnick could demonstrate to WELLS FARGO that the documents were in fact valid.

78.     Irrespective of WELLS FARO's woefully vague denial, on September 29, 2015, Brosnick appealed the decision as best as he could by providing WELLS FARGO with IRS certified forms for each of his businesses, although it was like throwing darts in the dark, hoping that these documents would demonstrate the validity of whatever document that WELLS FARGO deemed were not valid.

***Fifth Home Preservation Specialist***

79.     On October 7, 2015, WELLS FARGO appointed Brosnick to another Home Preservation Specialist by the name of Ashley Schindler.

80.     On October 13, 2015, Brosnick received a letter from WELLS FARGO stating that the appeal had been received and that they were in the process of reviewing the appeal.

81.     During that time, Specialist Schindler did not request any documents or information from Brosnick.

82.     Specialist Schindler did not send any letters to Brosnick.

83.     There was no additional information or documentation for Specialist Schindler to request of Brosnick that was not already in his file.

***Denial of the Appeal for a Different Reason Other than the One given
in the September 15, 2015 Denial Letter***

84.     Two days later, on October 15, 2015, WELLS FARGO sent a letter to Brosnick stating that they had carefully researched the matter and that they did not make a mistake removing Brosnick's account from the modification review process. But what was more confounding than the insufficient reason given in the denial letter was that the denial of the appeal gave a different reason from the initial denial.

85.     The appeal denial indicated that Brosnick's application for Loan Modification was not because of discrepancies in the documents provided, but because he did not provide information and documents requested in a timely manner.

86.     Had WELLS FARGO stated that reason in its initial denial letter, Brosnick would have provided WELLS FARGO with irrefutable proof that it was in error regarding the timeliness of Brosnick's responses to request, by the five (5) different Home Preservation Specialist.

87.     Since WELLS FARGO's denial of the appeal, Brosnick has been defending against the foreclosure of his home and has even appealed the matter to the Florida Fourth District Court of Appeals.

88.     Based upon the allegations within this Complaint, WELLS FARGO's actions exhibit and are believed to be a pattern and practice of behavior in reckless disregard for Brosnick's rights.

89.     Brosnick has had to spend money in the form of gas, mileage, postage, and attorney's fees because of WELLS FARGO's actions described above.  Brosnick has had to drive 10.4 miles for a round trip to Merino Law for each in person meeting related to this matter, of which there have been many.  The law firm of Michael H. Merino, P.A. has spent in excess of

Fifty One Thousand Three Hundred and Thirty Nine Dollars ($51,339.00) related to the matters discussed within this Complaint.

90.     Brosnick has also had to hire the law firm of Stephen R. Verbit, P.A. to appeal the judgment of foreclosure before the Florida Fourth District Court of Appeals.  The law firm of Stephen R. Verbit has spent in excess of Thirty Three Thousand Three Hundred and Thirty One Thousand Dollars ($33,331.00) related to the matters discussed within this Complaint.

91.     At all times relevant to this action, and at the present time and for the foreseeable future, Plaintiff has suffered and continues to suffer emotional distress that has, and continues to have, profound negative consequences on Plaintiff's day-to-day activities and Plaintiff's ability to have peaceful wellbeing as a direct result of Defendant's refusal to comply with RESPA.

**COUNT ONE:**
**VIOLATION OF 12 C.F.R. 1024.41(b)(2)(B)**
**REAL ESTATE SETTLEMENT AND PROCEDURES ACT**
**FAILURE TO STATE WHETHER LOSS MITIGATION APPLICATION**
**IS COMPLETE OR INCOMPLETE**

92.     Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs 1 through 91 in their entirety, as if fully rewritten herein.

93.     Pursuant to 12 C.F.R. § 1024.41(b)(2)(B), the Defendant was obligated to notify the Plaintiff in writing within five (5) days after receiving his loss mitigation application that: (i) the servicer acknowledged receipt of the loss mitigation application and (ii) whether the loss mitigation application was either complete or incomplete.

94.     The purpose of 12 C.F.R. § 1024.41 is to assist consumers in attempting to modify their mortgage loans in order to save their homes.  On January 13, 2015, the Defendant received the Plaintiff's loss mitigation application.

95.     The Defendant was obligated to comply with the above noted five (5) day deadline within 21 C.F.R. § 1024.41(b)(2)(B) by January 18, 2015.

96.     On January 16, 2015, the Defendant sent a letter to the Plaintiff stating that the Plaintiff's loss mitigation application was in underwriting without stating whether the Plaintiff's loss mitigation application was complete or incomplete.

97.     The Defendant's failure to comply with the requirements of 12 C.F.R. § 1024.41(b)(2)(B) by the January 18, 2015 deadline was a willful violation of the protections afforded to homeowners pursuant to § 1024.41.

98.     This failure to comply with the requirements of 12 C.F.R. § 1024.41(b)(2)(B) is but one example of the multiple violations of this section set forth in the general allegations of this Complaint, and, by virtue of paragraph 92, are all incorporated into Count One.

99.     Based upon the allegations within this Complaint, the Defendant's actions exhibit and are believed to be a pattern and practice of behavior in reckless disregard for Plaintiff's rights.

100.    As a result of the Defendant's actions, the Defendant is liable to the Plaintiff for actual damages, statutory damages of up to $2,000.00, costs and attorney's fees pursuant to 12 U.S.C. § 2605.

WHEREFORE, Plaintiff is entitled to recover his actual damages that resulted from the Defendant's violation of law, including but not limited to the following: (a) photocopying and certified mail expenses to ensure Defendant's compliance with Regulation X throughout the loss mitigation process; (b) cost of traveling to and from attorney's office incurred as a result of having to send additional correspondence due to Defendant's failure to comply with Regulation X; (c) extra cost and fees assessed to mortgage balance due to Defendant's failure to comply

with Regulation X; (d) lost wages from missed work in connection with Plaintiff's efforts to save his home due to Defendant's failure to comply with Regulation X; (e) emotional distress caused by Defendant's blatant and willful violation of the Plaintiff's rights under Regulation X; and (f) attorney's fees and costs expended by the Plaintiff to get Defendant to otherwise comply with Regulation X.

**COUNT TWO**
**VIOLATION OF 12 C.F.R. § 1024.41(g)**
**REAL ESTATE SETTLEMENT PROCEDURES ACT**
**MOVING FOR FORECLOSURE SALE WHILE PLAINTIFF'S LOSS**
**MITIGATION APPLICATION WAS UNDER REVIEW**
**"DUAL-TRACKING"**

101.    Plaintiff restates and incorporates herein all of the statement and allegations contained in the preceding paragraphs 1 through 91 in its entirety, as if fully rewritten herein.

102.    Pursuant to 12 C.F.R. § 1024.41(g), if a borrower submits a complete loss mitigation application after the servicer has made the filing required by applicable law for a judicial foreclosure but more than 37 days before a foreclosure sale, a servicer shall not move for an order of sale, unless:

> "(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
> (3) The borrower fails to perform under an agreement on a loss mitigation option."

103.    A "[c]omplete loss mitigation application is defined as an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigations options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

104.   If the servicer finds the application is incomplete, then it must state which additional documents are needed to complete the loss mitigation application and provide a reasonable date by which the borrower must submit the documents in that same written notice. 12 C.F.R. § 1024(b)(2).

105.   And pursuant to 12 C.F.R. § 1024.41(c)(2)(iv):

"If a borrower submits all the missing documents and information as stated in the notice required pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B), or *no additional information is requested in such notice,* the application shall be considered *facially complete.*  If the servicer later discovers additional information or corrections to a previously submitted documents are required to complete the application, the servicer must promptly request the missing information or corrected documents and *treat the application as complete for purposes of paragraphs ((f)(2) and (g) of this section* until the borrower is given a reasonable opportunity to complete the application." (Emphasis added).

106.   Because Specialist Parra's January 16, 2015 letter did not request *additional information,* Brosnick's application, at that time, must be considered to have been *facially complete.*

107.   Accordingly, as of January 16, 2015, Brosnick had submitted a facially complete loss mitigation application and was entitled to the foreclosure protections found in 12 C.F.R. § 1024.41(g).

108.   Section 1024.41(g) provides that where a borrower submits a complete loss mitigation application after the servicer has filed the judicial foreclosure process but more than 37 days before the foreclosure sale, the servicer shall not move for an order of sale, unless:

"(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
(2) The borrower rejects all loss mitigation options offered by the servicer; or
(3) The borrower fails to perform under an agreement on a loss mitigation option."

109.    None of the three exceptions described above from § 1024.41(g) apply, so as of January 13, 2015, when Plaintiff provided his facially complete loss mitigation application to Defendant, Defendant was prohibited from moving for an order setting a foreclosure sale while it was considering Brosnick's request for Loan Mitigation.

110.    Defendant moved for an order setting a foreclosure sale on April 22, 2015 and again on August 18, 2015, in violation of § 1024.41(g).

111.    As a result of the Defendant's actions, the Defendant is liable to the Plaintiff for actual damages, statutory damages of up to Two Thousand Dollars ($2,000.00), costs and attorney's fees pursuant to 12 U.S.C. § 2605.

WHEREFORE, Plaintiff is entitled to recover his actual damages that result from the Defendant's violation of law, including but not limited to the following: (a) photocopying and certified mail expenses to ensure Defendant's compliance with Regulation X throughout the loss mitigation process; (b) cost of traveling to and from attorney's office incurred as a result of having to send additional correspondence due to Defendant's failure to comply with Regulation X; (c) extra cost and fees assessed to mortgage balance due to Defendant's failure to comply with Regulation X; (d) lost wages from missed work in connection with Plaintiff's efforts to save his home due to Defendant's failure to comply with Regulation X; (e) emotional distress caused by Defendant's blatant and willful violation of the Plaintiff's rights under Regulation X; and (f) attorney's fees and costs expended by the Plaintiff to get Defendant to otherwise comply with Regulation X.

**COUNT THREE**
**VIOLATION OF 12 C.F.R. § 1024.41(d)**
**REAL ESTATE SETTLEMENT PROCEDURES ACT**
**FAILURE TO PROVIDE PROPER DENIAL NOTICE**

112.    Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs 1 through 91 in their entirety, as if fully rewritten herein.

113.    Section 1024.41(d) provides that if a servicer denies a loss mitigation application, the servicer shall state in the notice sent to the borrower the *specific reason or reasons* for the servicers determination.

114.    On September 18, 2015, Plaintiff received a denial letter from Defendant which stated that the loan modification had been denied due to the borrower not providing the lender with *valid* documents as requested.

115.    As stated in the general allegations, in the course of nine (9) months of responding to numerous request for information and documentation with Defendant's five (5) different Home Preservation Specialist, Plaintiff had produced to Defendant reams of information and documentation.

116.    Defendant did not inform Plaintiff which specific document was purportedly not valid.

117.    As such, the Defendant's September 18, 2015 denial letter failed to comply with, and is a violation of, 12 C.F.R. § 1024.41(d).

118.    Based upon the allegations within this Complaint, the Defendant's actions exhibit and are believed to be a pattern and practice of behavior in reckless disregard for the Plaintiff's rights.

119.    As a result of the Defendant's actions, the Defendant is liable to the Plaintiff for actual damages, statutory damages of up to Two Thousand Dollars ($2,000.00), costs and attorney's fees pursuant to 12 U.S.C. § 2605.

WHEREFORE, Plaintiff is entitled to recover his actual damages that result from the Defendant's violation of law, including but not limited to the following: (a) photocopying and certified mail expenses to ensure Defendant's compliance with Regulation X throughout the loss mitigation process; (b) cost of traveling to and from attorney's office incurred as a result of having to send additional correspondence due to Defendant's failure to comply with Regulation X; (c) extra cost and fees assessed to mortgage balance due to Defendant's failure to comply with Regulation X; (d) lost wages from missed work in connection with Plaintiff's efforts to save his home due to Defendant's failure to comply with Regulation X; (e) emotional distress caused by Defendant's blatant and willful violation of the Plaintiff's rights under Regulation X; and (f) attorney's fees and costs expended by the Plaintiff to get Defendant to otherwise comply with Regulation X.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Glenn Brosnick, respectfully asks this Honorable Court to enter an order granting the Plaintiff judgment for the following:

(i)    Actual damages exceeding One Hundred Thousand Dollars ($100,000.00) for the harm caused by Defendant to the Plaintiff, as detailed above.

(ii)    Statutory and punitive damages to be determined at Trial.

(iii)    Costs associated with and attributable to the Defendant based upon the allegations within this Complaint.

(iv)    Attorney's fees and costs associated with the litigation of the instant action.

(v)    That the Defendant be ordered to comply with RESPA as it services the Plaintiff's mortgage loan.

(vi)    Any such other relief as the Honorable Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 26th, 2018

Respectfully submitted,

   /s/ Michael H. Merino
Michael H. Merino, P.A.
Attorney for Plaintiff
6741 Orange Drive
Davie, Florida 33314
Tel: (954) 321-7701
Fax: (954) 791-3024
Service email: attorneyservice@merinolegal.com


NICOLEAU | LAW

Co-Counsel for Plaintiff
Michael D. Nicoleau, Esq.
11900 Biscayne Blvd., Suite 805
Miami, Florida 33181
Tel.: (305) 438-7883
Fax.: (786) 475-9022
Primary email: michael@nicoleaulaw.com
Secondary email: eservice@nicoleaulaw.com

By: /s/ Michael Nicoleau
MICHAEL D. NICOLEAU, ESQ.
Fla. Bar No.: 256810

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via the CM/ECF system this 26th day of March, 2018.

By: /s/ Michael D. Nicoleau
MICHAEL D. NICOLEAU, ESQ.
Fla. Bar No.: 256810
michael@nicoleaulaw.com